UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION


UNITED STATES OF AMERICA        CASE NO. 17-cr-00331

VERSUS        JUDGE FOOTE

NANETTE HUNTSBERRY (01)
JABORI HUNTSBERRY (02)        MAGISTRATE JUDGE HANNA


**REPORT AND RECOMMENDATION**

Pending before the Court are multiple motions to suppress by both defendants. Nanette Huntsberry filed a motion to suppress [Rec. Doc. 33] which was adopted by Jabori Huntsberry. [Rec. Doc. 37]. Jabori Huntsberry filed his own motion to suppress [Rec. Doc. 35] which was later amended [Rec. Doc. 47]. Both motions were set for a simultaneous hearing at which it was discovered there were additional search warrants that had not been provided to the defendants prior to the hearing. Therefore, the hearing was recessed, and the warrants were located and provided to the defendants. Upon receipt of the additional warrants, Nanette Huntsberry filed a second motion to suppress [Rec. Doc. 69] which was adopted by Jabori Huntsberry. [Rec. Doc. 70]. The evidentiary hearing was resumed on May 16, 2018. For the foregoing reasons, it is recommended that all of the motions be DENIED.

## Factual and Procedural Background

On December 14, 2017, both of the defendants were indicted on one count of Conspiracy, in violation of 21 U.S.C. § 846; one count of Unlawful Use of a Communication Facility, in violation of 21 U.S.C. § 843(b); and one count of Possession of Marijuana with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(D). [Rec. Doc. 1]. Jabori Huntsberry was also indicted on one count of Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) and there is a forfeiture count for the weapon. [Id.]. Both defendants were released pending trial at arraignment on December 20, 2017. [Rec. Docs. 15, 19].

At the initial status conference, counsel for Mrs. Huntsberry indicated she would seek a continuance beyond the time frame required under the Speedy Trial Act, 18 U.S.C. § 3161 *et. seq*. The motion was granted and trial was set for May 15, 2018. [Rec. Doc. 32]. Mrs. Huntsberry's first motion to suppress was filed on February 14, 2018, while Mr. Huntsberry's first motion to suppress was filed on February 20, 2018, and amended on March 14, 2018. The government opposed Mrs. Huntsberry's motion [Rec. Doc. 40], to which Mrs. Huntsberry filed a reply. [Rec. Doc. 41]. The government filed a separate opposition to Mr. Huntsberry's motion [Rec. Doc. 42], to which Mr. Huntsberry filed a reply. [Rec. Doc. 44].

This Court set the motions for hearing on April 5, 2018. [Rec. Doc. 48]. Due to the recess necessitated by the delay in locating the additional search warrants and resuming the evidentiary hearing, the trial was continued until August 27, 2018, with the pre-trial conference to be held on July 13, 2018. [Rec. Doc. 66]. On May 9, 2018, Mrs. Huntsberry filed her second motion to suppress, which was adopted by Mr. Huntsberry. [Rec. Docs. 69, 70]. As the second motion dealt with the same issues that were raised in the initial hearing, but simply added the newly provided search warrants, it was also taken up at the evidentiary hearing, which was resumed on May 16, 2018. [Rec. Doc. 67].

From the evidence in the record, this Court makes the following factual findings. Nanette Huntsberry is the mother of Jabori Huntsberry. [Gov't. Ex. 6, Bates p. 1022]. They live next door to each other in Abbeville, Louisiana, at 5629 and 5623 Albert Road respectively. [Id.; Rec. Doc. 76, p. 10]. On February 14, 2014, Postal Inspector Augustus Magee was notified by management at the Abbeville Post Office that they were in possession of an express mail package addressed to Amazing Hair Salons at the 5623 Albert Road address. [Deft. Ex. 3, Bates p. 225; Rec. Docs. 35-4, p. 5; 76, p. 59; 77, p. 22]. Inspector Magee learned that there was no hair salon operating at that address. [Rec. Docs. 76, p. 60; 77, pp. 22-23].

The package contained a return address in Fresno, California, which did exist but which had been vacant for the previous four months according to the post office

that serviced that address. [Deft. Ex. 3, Bates p. 225; Rec. Docs. 35-4, p. 5; 76, p. 60; 77, p. 24]. Inspector McGee contacted local law enforcement to provide a certified drug detection K-9 to do a perimeter search of the package. [Deft. Ex. 3, Bates p. 225; Rec. Docs 35-4, p. 5; 77, p. 24]. Inspector Magee also notified Sgt. Elliot Broussard of the Vermilion Parish Sheriff's Department, with whom he had been working for months as more fully set forth below, and Sgt. Broussard was present for the K-9 sniff. [Gov't. Ex. 6, Bates p. 1022; Rec. Doc. 77, p. 77]. When exposed to the package, which was arranged with three other sealed packages that were similar in size and color but empty, the K-9 alerted positive to the presence of narcotics in the package addressed to 5623 Albert Road. [Deft. Ex. 3, Bates p. 225; Rec. Docs. 35-4, p. 5; 76, p. 93; 77, pp. 24, 46-48]. Inspector Magee obtained a federal search warrant to open the package the same day. [Rec. Doc. 77, p. 24]. When the package was opened, approximately 2 pounds of marijuana was discovered. [Rec. Docs. 35-5, p. 2; 76, pp. 59-60; 77, p. 25].

Inspector Magee decided that another postal inspector would make a controlled delivery of the package to 5629 Albert Road, the address of Mrs. Huntsberry, as normal and on schedule. [Rec. Docs. 76, p. 60; 77, pp. 26-27]. Mrs. Huntsberry was also a postal service employee. [Rec. Doc. 76, pp. 36, 47-48]. She had previously made arrangements with her carrier for packages addressed to 5623 Albert Road to be delivered to her address. [Gov't. Ex. 4; Rec. Doc. 76, pp. 37-38].

This practice had been observed by Sgt. Broussard on November 20, 2013, when Mr. Huntsberry accepted a package addressed to 5623 Albert Road at his mother's house, 5629 Albert Road, and then went back to his house. [Gov't. Ex. 6, Bates p. 1022]. It was observed again on February 4, 2014, when Vermilion Parish Sheriff's Deputy Randy Simon observed Mrs. Huntsberry accept a package at her address that was also labeled for delivery to 5623 Albert Road. [Id.].

In anticipation of the controlled delivery, Sgt. Broussard sought and obtained a search warrant for both houses from 15th Judicial District Judge Edward Broussard. [Rec. Doc. 76, pp. 10-12]. Sgt. Broussard testified, credibly, that he prepared two separate search warrants – one for each address – with two separate applications and affidavits and brought both sets to Judge Broussard. [Id., pp. 10-11, 29-30, 40-42]. He further testified that, after Judge Broussard placed him under oath, he signed both affidavits. [Id., pp. 11, 30, 42,].  He then personally observed Judge Broussard sign both affidavits and warrants. [Id., pp. 15, 30, 41-42]. The warrants had to be stamped with Judge Broussard's name/title and everything had to be copied. [Id., pp. 11-12, 42-43].  Sgt. Broussard was given the two original search warrants and he believed he was given copies of the two applications and affidavits for his file. [Id., pp. 31, 41-44]. Judge Broussard's office was to retain the original affidavits. [Id., p. 12].

Later that afternoon, the controlled delivery was made to Mrs. Huntsberry at her home. [Rec. Docs. 35-3, p. 1; 76, p. 39]. She accepted the package and went

inside. [Rec. Docs. 35-3, p. 1; 77, pp. 26-27]. Within minutes, law enforcement conducted simultaneous searches of both addresses, pursuant to the two search warrants. [Rec. Docs. 35-3, p. 2; 77, pp. 27, 77]. Mrs. Huntsberry was found in her bathroom with the unopened package. [Rec. Docs. 35-3, p. 2; 76, p. 39; 77, p. 78]. She was placed under arrest. [Rec. Doc. 35-3, p. 2]. Another shipping box, which was described as "exactly the same," was found opened with the same interior packaging that was contained in the controlled delivery package, as well as the same shipping label. [Rec. Doc. 35-3, p. 2].

Mr. Huntsberry was not at home when the search of his residence began. An assault rifle and pistol were found. [Rec. Doc. 35-3, p. 2]. Mr. Huntsberry, a registered sex offender, was a prohibited person who could not possess a firearm. [Id.]. The search also revealed more packaging labels "exactly the same" as the packaging labels found inside of Mrs. Huntsberry's residence. [Id.]. Packaging labels were also found, which were addressed to other persons identified in the investigation. [Id.]. When Mr. Huntsberry arrived at his residence, he was likewise placed under arrest. [Id.].

Returns were provided on the back of both original warrants, and the original warrants were returned to Judge Broussard's office after Sgt. Broussard made a copy of them. [Rec. Doc. 76, pp. 33, 40, 44].

Sgt. Broussard testified that, as he was reviewing his file for "courtroom testimony," he discovered he had duplicate copies of the affidavit in support of the warrant for Mr. Huntsberry's address but no copy of the affidavit for Mrs. Huntsberry's address. [Rec. Doc. 76, pp. 13-14]. He did have a signed copy of the warrant and return for Mrs. Huntsberry's residence [Rec. Doc. 35-2, pp. 4-5]; therefore, he contacted Judge Broussard's office to get a copy of the affidavit in support of the warrant for Mrs. Huntsberry's address. [Id., p. 14]. However, Judge Broussard's staff could not locate the original affidavit nor could they locate the original warrant and return. [Rec. Doc. 76, pp. 14-15, 33-34, 40]. Sgt. Broussard printed an exact duplicate copy of the affidavit from his computer and placed it in his file with a note setting forth what had happened and that the affidavit was an "unsigned non original." [Gov't. Exs. 1, 3; Rec. Doc. 76, pp. 13-18].

Mrs. Huntsberry contends in her first motion that her home was searched pursuant to an invalid search warrant because the warrant was not supported by oath or affirmation. [Rec. Doc. 33]. Although Mr. Hunstberry adopted that motion, as set forth below, he has no standing to object to the search of a third party's residence.

In Mr. Huntsberry's motion, he initially contended that there was no search warrant with an affidavit for his address. [Rec. Doc. 35]. However, after his motion was filed, Mr. Huntsberry was provided a copy of the search warrant, application and affidavit for his address, such that the argument has been withdrawn by the

amendment. [Rec. Doc. 47]. In the remaining aspects of his amended motion, as well as in Mrs. Huntsberry's second motion, the defendants challenge the searches of packages that were opened by Inspector Magee, pursuant to federal search warrants, in the months before the arrests, as part of the ongoing investigation by Inspector Magee and the Vermilion Parish Municipal Narcotics Task Force. Information from Inspector Magee's investigation was a significant part of the affidavit in support of probable cause for the search warrant executed by Judge Broussard. Both defendants contend the federal warrants were lacking in probable cause and all of the evidence obtained in the search of the Huntsberry residences should be suppressed as fruit of the poisonous tree.

Inspector Magee obtained a total of five different federal search warrants, signed by three different magistrate judges, including two by the undersigned. The first is dated November 6, 2013, was executed by the undersigned, and was addressed to Mrs. Nakendra Moore, who dated the cousin of Jabori Hunstberry, at her post office box. [Gov't. Ex. 5, Bates pp. 216-20; Rec. Doc. 76, pp. 56-57]. The package was found to contain marijuana, 80 oxycodone pills and 159 hydrocodone pills. [Gov't. Ex. 5, Bates pp. 1025-26; Rec. Doc. 77, pp. 8-13].

The second and third warrants are both dated December 3, 2013, and were executed by now retired Magistrate Judge Riedlinger of the Middle District of Louisiana. [Gov't. Ex. 5, Bates pp. 1057-72]. One of these was addressed to N.

Huntsberry, at a post office box she leased, and it contained over two pounds of marijuana. [Gov't. Ex. 5, Bates pp. 1059, 1064]. The other one was addressed to N. Huntsberry at 5623 Albert Road—Mr. Huntsberry's address—and it contained over three pounds of marijuana. [Gov't. Ex. 5, Bates pp. 1065-72; Rec. Doc. 77, pp. 14-22].

The fourth warrant was dated February 4, 2014, and was executed by now retired Magistrate Judge Hill in the Western District of Louisiana [Gov't. Ex. 5, Bates pp. 1074-81]. It was addressed to Amazing Hair Salon at 5623 Albert Road and was returned unexecuted. [Gov't. Ex. 5, Bates p. 1081]. This package was intended to be the subject of a controlled delivery; however, there were insufficient resources to conduct the delivery and anticipatory search, so it was allowed to be delivered. [Rec. Doc. 77, pp. 35-36, 64-66]. On the same date, Deputy Simon observed a package, addressed to 5623 Albert Road, be accepted by Mrs. Huntsberry at her residence on 5629 Albert Road [Gov't. Ex. 6, Bates p.1022; Rec. Doc. 35-3, p. 2]. Inspector Magee believed this to be the package that was the subject of the warrant which was returned unexecuted. [Rec. Doc. 77, pp. 69-71].

The fifth warrant was dated February 14, 2014, executed by the undersigned, and also addressed to Amazing Hair Salons at 5623 Albert Road [Deft. Ex. 3, Bates pp. 221-26, Rec. Doc. 35-4, Bates pp. 221-26; Rec. Doc. 77, pp. 22-26]. This

package, which was the subject of the controlled delivery, contained two pounds of marijuana. [Rec. Docs. 35-5; 77, p. 25].

In each affidavit Inspector Magee followed essentially the same format to establish probable cause. [See Gov't. Ex. 5, Deft. Exs. 1, 3; Rec. Docs. 35-4; 35-6; 76, pp. 55-56]. All packages were sent express mail – a method often utilized by drug dealers for shipping drugs and drug proceeds.  The packages fit the profile established by the U.S. Postal Inspection Service as packages consisting of characteristics frequently shared by packages containing drugs.  Although Inspector Magee did not specifically list these characteristics in the affidavits for security reasons, he identified them on the record, as follows: the package came from a known source city for drugs; it contained a handwritten label; shipping was paid in cash; and there was a signature waiver. [Rec. Doc. 76, p. 56; 77, pp. 71-72]. Inspector Magee testified that identifying these characteristics was part of his training, but he was not aware of any specific policy document or manual that contained the characteristics. [Rec. Doc. 77, pp. 71-72].

In the last two affidavits in support of warrants executed in February of 2014, including the search of the package which was the subject of the controlled delivery, Inspector Magee also reported the results of the search warrant obtained in December 2013. Specifically, the affidavit reported the results of the search of the package for which the addressee was N. Huntsberry at the address of 5623 Albert

Road, and which yielded a find of 3 pounds and 14 ounces of marijuana. [Gov't. Ex. 5, Bates p. 1077; Rec. Doc. 35-4, p. 4-5, Deft. Ex. 3, Bates p. 224-225].

In each of the five affidavits, Inspector Magee reported an issue with the return address. In the first, the address was non-existent in the postal district of origination. [Gov't. Ex. 5, Bates p. 219; Rec. Docs. 76, p. 57; 77, pp. 9-10]. In the second, the address was in Memphis, Tennessee, and was a valid address for the person identified as the sender at that address. [Gov't. Ex. 5, Bates pp. 1059-60; Rec. Doc. 77, pp. 19-20]. However, the package was not mailed from that address, rather, it was sent from the same city as some of the other packages – Fresno, California. [Gov't. Ex. 5, Bates p. 1059; Rec. Doc. 77, p. 19-20]. In the third, the address was a good address, but the postal management that serviced that address did not recognize the name as somebody who received mail there. [Gov't. Ex. 5, Bates p. 1068; Rec. Doc. 77, p. 17]. In the fourth, which was returned unexecuted, the address did not exist at all. [Gov't. Ex. 5, Bates p. 1077]. Finally, in the affidavit for which the subject was the controlled delivery, while the address existed, it had been vacant for the previous four months. [Deft. Ex. 3, Bates pp. 224-25; Rec. Docs. 35-4, pp. 2-3; 77, p. 24].

The receiving address for four of the packages was either Amazing Hair Salon at 5623 Albert Road, N. Huntsberry at 5623 Albert Road (Mr. Huntsberry's address), or a post office box leased by Mrs. Huntsberry. [Gov't. Ex. 5; Deft. Ex. 3; Rec. Doc.

35-4]. The receiving address for the fifth package was a post office box leased to Nakendra Moore, a co-defendant in related state court proceedings who was in a relationship with Jabori Huntsberry's cousin. [Gov't. Ex. 5, Bates pp. 216-20; Deft. Ex. 1, Bates p. 218; Rec. Doc. 76, pp. 56-57]. Although not in the affidavit, over the course of Inspector Magee's investigation he learned that Mrs. Huntsberry picked up packages from that post office box. [Rec. Doc. 76, p. 57].

Based on this information, as well as other information he had obtained in his investigation though not disclosed in the affidavits, Inspector Magee detained the packages and obtained the assistance of four different certified K-9 dogs and their handlers to conduct a perimeter search, or sniff, of each of the suspected packages with other packages that were similar in size and color. [Gov't. Ex. 5; Deft. Exs.1, 3; Rec. Docs. 35-4; 76, p 93; 77, p. 48]. Some packages were empty, some were not, and all were sealed. [Rec. Doc. 77, p. 48]. The K-9 used in the two perimeter searches in December of 2013 was the same. [Gov't. Ex. 5, Bates pp. 1060, 1068]. In every case, the K-9 alerted positive for narcotics in the suspected package. [Gov't. Ex. 5; Deft. Exs. 1, 3; Rec. Doc. 35-5]. Included in every affidavit is the date the K-9 was most recently certified. [Id.]. Every magistrate judge to whom the affidavits were presented found probable cause. [Id.].

The information obtained from the search warrants was shared with Sgt. Broussard as part of the ongoing investigation by Inspector Magee. [Rec. Doc. 76,

pp. 65-66]. In addition, the Huntsberrys were placed under surveillance. [Rec. Doc. 76, pp. 7-8]. Some details of this surveillance were included in the affidavit in support of the search warrant issued by Judge Broussard. [Gov't. Ex. 6, Bates p. 1022]. Specifically, on November 20, 2013, Sgt. Broussard personally observed Mr. Huntsberry accept delivery of a package addressed to 5623 Albert Road at Mrs. Huntsberry's house at 5629 Albert Road, and then walk to his own home. [Id.] On February 4, 2014, Deputy Randy Simon personally observed Mrs. Huntsberry accept a package for 5623 Albert Road at her address. [Id.]. As previously indicated, Inspector Magee believed this package to be the package that was the subject of the search warrant that was returned unexecuted.

The contention by the defendants is that all of the federal search warrants were "bare bones" that only contained conclusory allegations and could not be relied upon in good faith by Inspector Magee. As a result, since the affidavits in support of the search warrants signed by Judge Broussard were supported by the investigation conducted by Inspector Magee, including information obtained through the execution of the federal warrants, all of the evidence seized in this case should be excluded.

## Applicable Law and Analysis

## 1.  The Federal Search Warrants were Supported by Probable Cause.

The Fourth Amendment assures the right to be free from unreasonable searches and seizures of items entrusted to the postal system. *See United States v. Van Leeuwen,* 397 U.S. 249, 251 (1970) (quoting *Ex Parte Jackson,* 96 U.S.727, 733 (1878)). However, certain packages may be detained for investigative purposes when the authorities have reasonable suspicion of criminal activity including whether the package meets a "drug package profile." *See United States v. Lux*, 905 F.2d 1379, 1382 (10th Cir. 1990).  In such cases where a temporary detention for further investigation is involved based on reasonable suspicion, including to permit examination by drug-detecting dog, there is no Fourth Amendment violation prior to a warrant being issued. *Id.*; *see also United States v. Goldstein,* 635 F.2d 356, 361-62 (5th Cir. 1981); *United States v. Hoang,* 486 F.3d 1156, 1162 (9th Cir. 2007); *United States v. Robinson,* 390 F.3d 853, 869-70 (6th Cir. 2004); *United States v. Ramirez,* 342 F.3d 1210, 1212 (10th Cir 2003). As the Supreme Court said in *Van Leeuwen*,

> No interest protected by the Fourth Amendment was invaded by forwarding the packages the following day rather than the day when they were deposited. The significant Fourth Amendment interest was in the privacy of this first-class mail; and that privacy was not disturbed or invaded until the approval of the magistrate was obtained.

397 U.S. at 253.

Therefore, based on the drug package profile articulated by Inspector Magee, combined with what his investigation had revealed concerning the return addresses and the addressees, there was not an unreasonable seizure of the packages to detain them for further investigation, including a K-9 sniff.

Contrary to the assertion by one of the defendants, a sniff by a K-9 is not a search within the meaning of the Fourth Amendment. *United States v. Place*, 462 U.S. 696, 707 (1983); *Goldstein*, 635 F.2d at 361; *United States v. Lovell*, 849 F.2d 910, 914 (5th Cir. 1988); *United States v. Seals,* 987 F.2d 1102, 1106 (5th Cir. 1993). Based solely on the K-9s alerting to the presence of narcotics in the packages, probable cause was established to search the packages. *United States v. Dovali-Avila,* 895 F.2d 206, 207-08 (5th Cir. 1990); *United States v. Gonzalez–Basulto*, 898 F.2d 1011, 1013 (5th Cir. 1990).  However, Inspector Magee went a step further and obtained search warrants. The affidavits in support of those warrants included the information concerning Inspector Magee's qualifications, the alert by the K-9, the last time the K-9 had been certified, a reference to the drug package profile, as well as the other information obtained from the investigation including the issues with the return addresses, the addressees, and in the context of the 2014 warrants, the prior discovery of drugs in a package addressed to N. Huntsberry – a postal service employee.

In *United States v. Daniel*, the Fifth Circuit upheld the magistrate judge's

finding of probable cause, as follows:

> The DEA investigator's affidavit established that he was an experienced drug investigator, that the package was suspicious for a variety of specific reasons, that it came from a source city for drugs, that the dog alerted to the package, and that drug dealers often ship drugs via private common carrier. The affidavit also specifically explained that the dog was trained to detect the presence of controlled substances. This information clearly constitutes a substantial basis for issuing a warrant.

*United States v. Daniel*, 982 F.2d 146, 151–52 (5th Cir. 1993). The circuit court

identified the drug package profile as including many of the same factors articulated

by Inspector Magee, and in addition, indicated that the reliability of the K-9 being

placed in the affidavit was not necessary. *See id.* at 150, n.5 and 151, n.7.

This Court finds that Inspector Magee had a reasonable suspicion to detain

the packages for the K-9 sniff. Once the K-9s alerted positive, Inspector Magee

provided sufficient information in his affidavits for this Court to find that there is a

substantial basis to conclude that all five federal search warrants were issued based

on probable cause to believe the packages that were the subject of the search

contained narcotics. As such, it is recommended that the evidence seized as a result

of those searches should not be excluded nor should the evidence and information

obtained from those searches be precluded in the determination of probable cause

to search in support of the warrants issued by Judge Broussard.

**2.  The State Search Warrants were Supported by Probable Cause.**

The information provided to Judge Broussard in the affidavit of Sgt. Broussard included much of the information provided by Inspector Magee. While the defense takes issue with some inaccuracies in the information, this Court finds those alleged inaccuracies to be either immaterial or a matter of interpretation, rather than based on an ill-willed intent to deceive. Specifically, there is a substantial basis for Judge Broussard to conclude that a search would uncover wrongdoing at both of the Huntsberry addresses based on the following information set forth in the affidavit:

(1) The mother and son had received multiple packages in the past (whether at one of the Albert Road addresses or Mrs. Huntsberry's post office box) that met the drug package profile. Some of those packages were intercepted and searches of those packages conducted pursuant to search warrants had revealed the presence of narcotics;

(2) The normal carrier was directed by Mrs. Huntsberry, a postal service employee, to deliver packages addressed to 5623 Albert Road to 5629 Albert Road, *i.e.* her home located right next door;

(3) Surveillance had confirmed the practice of the above-described delivery at the 5629 Albert Road address on more than one occasion;

(4) An intercepted package that was searched pursuant to a federal search warrant on February 14, 2014 (a) met the same drug package profile as other packages addressed to N. Huntsberry in the past that were found to contain narcotics; (b) was addressed to 5623 Albert Road; (c) was given a perimeter sniff by a K-9 who alerted to the presence of narcotics; and (d) when opened, the package contained approximately two pounds of marijuana. These facts supported the request to conduct an anticipatory search of BOTH houses if the package containing the narcotics was accepted at 5629 Albert Road as had been done in the past.

This Court finds there is a substantial basis to conclude that the affidavit of Sgt. Broussard provided sufficient reliable information for Judge Broussard to conclude that a search of both houses would uncover evidence of wrongdoing. Therefore, the Court recommends that none of the evidence seized as a result of these searches should be suppressed.

**3.  There was an Affidavit in Support of Nanette Huntsberry's warrant.**

The record reveals that there are two search warrants signed by Judge Broussard, with the confirming stamp of his identity, dated February 14, 2014 – one for the residence of Nanette Huntsberry at 5629 Albert Road, and one for the residence of Jabori Huntsberry at 5623 Albert Road [Gov't. Ex. 2, Bates p.275; Gov't. Ex. 6, Bates p. 1023; Rec. Doc. 35-2, pp. 4-5]. The application and affidavit in support of the search warrant for Jabori Huntsberry's residence is signed by Sgt. Broussard, notarized and signed by Judge Broussard, and the stamp for his signature is contained beneath his signature just as Sgt. Broussard testified.

Other than the names and addresses, the two search warrants are identical. Likewise, in Gov't. Ex. 1, which is the computer generated copy of the application and affidavit in support of the search warrant for Mrs. Huntsberry's residence, a close inspection of the *affidavit* reveals that it is identical to the language contained in the affidavit for Mr. Huntsberry's residence. However, the applications for both

warrants differ mostly due to the different descriptions of the property to be searched. [*Cf.* Gov't. Ex. 1, Bates p. 273 and Gov't. Ex. 6, Bates p. 1021].

As an initial matter, having found that probable cause existed for the search of Mr. Huntsberry's home, Mr. Huntsberry has no standing to object to the search of Mrs. Huntsberry's home based on the missing affidavit and application. In *United States v. Salducci,* 448 U.S. 83, 85 (1980), the Court held "defendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated." Mr. Huntsberry has not demonstrated any legitimate expectation of privacy in his mother's home. Therefore, he cannot vicariously seek the protection of the exclusionary rule even if Mrs. Huntsberry's Fourth Amendment rights were violated.

As to Mrs. Huntsberry's claim, the decision of *United States v. Gibbs,* 421 F.3d 352 (5th Cir. 2005), is dispositive. In *Gibbs,* a motion to suppress was sought when the affidavit issued in support of a search warrant was lost after it had been placed "somewhere in evidence." When the agent was notified that the affidavit was needed as evidence he could not find it nor could he produce a copy from his computer because it had crashed during a thunderstorm. Therefore, he attempted to reconstruct the affidavit using available police reports. However, he could not completely reconstruct the missing affidavit because of missing police reports

detailing a drug buy. He turned in the "affidavit" without disclosing the missing portions and the history surrounding the attempted reconstruction.

At the suppression hearing, the agent testified that the reconstructed affidavit was not a copy of the affidavit issued for the warrant. He also testified about the contents of the missing affidavit and, just as in this case, the facially valid and executed search warrant signed by the state judge was in evidence.  The court stated:

> [A]lthough the second affidavit is missing, this does not invalidate *per se* the search warrant; other evidence may be admitted to prove the affidavit's contents [*United States v.] Lambert,* 887 F.2d 1568, 1571 (11th Cir. 1989). Here, such other evidence is the testimony of the original affiant – Agent Bailey – and the reconstructed affidavit.

*Gibbs,* 421 F.3d at 358-359.

This Court found the testimony of Sgt. Broussard to be credible. The facially valid warrant was signed by Judge Broussard. The reconstructed affidavit was a mirror image of the one that was used to obtain the warrant for Jabori Huntsberry's mobile home. Furthermore, Sgt. Broussard contemporaneously noted exactly what happened rather than waiting silently in the hope it would not be discovered. Sgt. Broussard testified that he personally signed both affidavits and that he personally observed Judge Broussard sign both affidavits and warrants.

This Court has found the warrant was supported by probable cause and, on that basis, pretermits any discussion of the good faith exception set forth in *United States v. Leon,* 468 U. S. 897 (1984), other than to state that Sgt. Broussard testified,

and this Court accepts as true, that he believed he had copies of both of the affidavits in his file at the time the warrant was served.

### 4. No Legitimate Purpose is Served by Applying the Exclusionary Rule.

Given the credible testimony of Sgt. Broussard, the Court noted three possibilities which could have occurred after the various documents were executed and were then taken to be stamped and copied by the judge's staff. One is that the staff member did not return the affidavit for Mrs. Huntsberry's warrant at all. However, Sgt. Broussard testified he had two sets of documents when he left so this possibility seems unlikely. Another possibility is that copies of both affidavits were returned and both Sgt. Broussard and Judge Broussard's office staff misplaced the copy and original, respectively. The Court notes in passing that Judge Broussard's office staff could not locate the original search warrant for Nanette Huntsberry after it was returned following the search either. However, Sgt. Broussard did have a copy of the signed search warrant in his file with the return indicating that it did, in fact, exist as an original at some point.

The third, and in this Court's opinion, the most likely, scenario is that Sgt. Broussard was given two copies of the affidavit for Jabori Huntsberry's warrant by mistake, given the near identical contents with very small print. He admitted he did not check the documents when they were given back to him after being

copied/stamped. This scenario also seems the most likely because, when he did check, he found that he had duplicate copies of the affidavit for Jabori Huntsberry.

Under any of these scenarios, especially the most likely scenario, the Court finds applying the exclusionary rule would not serve its purpose to "deter police misconduct rather than to punish the errors of judges and magistrates." *Leon*, 468 U.S. at 916. Citing *Leon*, the *Gibbs* court stated: "In sum, when an officer executes a warrant *in good faith*, the deterrent effect of the exclusionary rule on that officer does not trump the costs of suppressing reliable physical evidence, even if the search is subsequently found violative of the Fourth Amendment." *Gibbs,* 421 F.3d at 357.

This Court finds there was an affidavit supporting the warrant to search Nanette Huntsberry's home that was supported by probable cause. To the extent the affidavit was somehow lost or destroyed, Sgt. Broussard nonetheless believed in good faith that he had a fully supported warrant when it was executed. Therefore, the Court recommends that the evidence obtained as a result of the search should not be excluded.

## Conclusion and Recommendations

Inspector Magee had reasonable suspicion to detain the five packages in the mail, and in doing so, no Fourth Amendment violation occurred. The K-9 sniffs which were performed by different certified dogs with their handler were all positive for the presence of narcotics. The positive alerts, combined with the

additional information contained in the affidavits of Inspector Magee, were sufficient to establish probable cause to search the packages as found by three different magistrate judges. There was no Fourth Amendment violation by Inspector Magee and the searches of the packages were valid. Therefore, the Court recommends the evidence seized as a result of these five searches not be excluded.

The affidavits utilized to support the issuance of a search warrant for the Huntsberry residences were likewise supported by probable cause and any minor inaccuracies contained therein were not material, or were subject to different interpretations and were not intentionally placed to mislead the issuing court. Further, the Court specifically finds there were two affidavits, which have been established by a preponderance of the evidence, and that no Fourth Amendment violation occurred in the search of either Nanette or Jabori Huntsberry's residence. Furthermore, applying the exclusionary rule would serve no useful purpose in light of the evidence presented as applicable to the missing affidavit. Therefore, it is recommended that the evidence obtained in these searches should not be excluded.

More specifically, the Court therefore recommends that all of the motions to suppress, as adopted and amended, [Rec. Docs. 33, 35, 37, 47 and 69] be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk

of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party

may respond to another party's objections within fourteen (14) days after being

served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any

objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings,

conclusions and recommendation set forth above, within 14 days after being served

with a copy, shall bar that party, except upon grounds of plain error, from attacking

on appeal the unobjected-to proposed factual findings and legal conclusions

accepted by the district court.  *See Douglass v. U.S.A.A.*, 79 F.3d 1415 (5th Cir.

1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a

proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district

judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).

Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District

Courts requires the district court to issue or deny a certificate of appealability when

it enters a final order adverse to the applicant. A certificate may issue only if the

applicant has made a substantial showing of the denial of a constitutional right.

Section 2253(c)(2). A party may, within fourteen (14) days from the date of this

Report and Recommendation, file a memorandum that sets forth arguments on

whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 8th day of June, 2018.

_____

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE