# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 17-00331-02 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| JABORI HUNTSBERRY (02) | MAGISTRATE JUDGE HANNA |

## MEMORANDUM RULING

Before the Court are a motion for a new trial and a renewed motion for a judgment of acquittal filed by Defendant Jabori Huntsberry. [Record Documents 139 and 140]. For the reasons given below, the motions are **DENIED**.

## I.    Background

Mr. Huntsberry was charged alongside his mother, Nanette Huntsberry, on three counts related to a conspiracy to obtain marijuana by mail: conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846, unlawful use of a communication facility to facilitate possession of marijuana with intent to distribute in violation of 21 U.S.C. § 843(b), and possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D). [Record Document 1 at 1–2]. Mr. Huntsberry was also charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). [*Id.* at 3].

The evidence at trial established the following facts. Mr. Huntsberry lives at 5623 Albert Road in Abbeville, Louisiana. His mother lives next door at 5629 Albert Road. Ms. Huntsberry, who worked for the postal service, asked the letter carrier to deliver packages addressed to 5623

Albert Road to her address. Testimony at trial established that at least one package received at 5629 Albert Road (but addressed to 5623 Albert Road) had been taken to 5263 Albert Road by Ms. Huntsberry. Evidence also established that she received a package that she then took to Ivan Ardoin ("Ardoin") and Nakendra Moore ("Moore"), other individuals involved in the drug conspiracy.

At a mail processing center, a postal inspector identified packages addressed to 5623 Albert Road with features suggesting that they might contain illegal drugs. On the basis of those features, several packages were exposed to drug detection dogs, who alerted. A warrant was then obtained to open a suspected drug package addressed to Amazing Hair Salon, a non-existent business, at 5623 Albert Road. When opened, the package contained two pounds of marijuana, a fact confirmed by subsequent laboratory analysis. After search warrants were obtained for both residences, a controlled delivery of the package was conducted on February 14, 2014. Ms. Huntsberry accepted the package at 5629 Albert Road; the search warrants were then executed. The package containing marijuana was found unopened in Ms. Huntsberry's home. In addition, a composition book was found in Mr. Huntsberry's home containing both rap lyrics (Mr. Huntsberry was an aspiring rapper) and notations associating amounts in dollars with amounts representing quantities of marijuana. Various shipping materials and mailing labels were also located in Mr. Huntsberry's home.

The two key government witnesses at trial were Ardoin and Moore. Both were friends and associates of Mr. Huntsberry, and both testified to their involvement with him in a conspiracy to obtain marijuana from California by mail. Ardoin testified that Mr. Huntsberry

approached him with a plan to obtain marijuana from California and that they purchased pound quantities together, some of which Ardoin kept for personal use. Moore testified that she allowed packages from California to be sent to her post office box and that she eventually learned that the packages contained marijuana. Moore also testified that she accepted money from Mr. Huntsberry that she would then send by wire transfer to recipients in California that he identified. Although the case agent who testified at trial could not definitely say that the money transfers were payment for marijuana, Moore testified that she believed this to be the case.

During the search of 5263 Albert Road, a rifle and a pistol were located in the master bedroom closet; trial testimony established that these were operable and had traveled in interstate commerce. At trial, Ardoin testified that he had left the guns on a truck parked outside of Mr. Huntsberry's home after a New Year's Eve party during which the guns had been fired.

After the Government rested, Defendants moved for judgments of acquittal, which the Court denied. [Record Documents 124, 125, and 126]. Before the jury charge and closing arguments, Defendants renewed their motions, which the Court again denied. [Record Documents 127, 128, and 129]. The jury convicted Mr. Huntsberry on all counts and acquitted Ms. Huntsberry on all counts. [Record Documents 129 at 2 and 134]. Mr. Huntsberry now files a motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure and a renewed motion for a judgment of acquittal under Rule 29. [Record Documents 139 and 140]. The Government has responded, and Mr. Huntsberry has replied, rendering this matter ripe for adjudication. [Record Documents 143 and 144].

## II.  Motion for a New Trial

Mr. Huntsberry claims a right to a new trial on four grounds. First, he argues that this Court erred in denying a motion to sever his felon-in-possession count because doing so placed the otherwise inadmissible fact of his prior felony conviction before the jury. [Record Document 140-1 at 18–20]. Second, he argues that it was improper for the Court to ask a question related to multiple conspiracies during voir dire, but then to refuse to give a multiple conspiracies instruction when charging the jury. [*Id.* at 7]. Third, he asserts that the trial resulted in a fundamental miscarriage of justice because a jury could not logically have convicted Mr. Huntsberry of the drug-related counts and acquitted Ms. Huntsberry of the same charges as the indictment alleged that they committed the offenses cooperatively. [*Id.* at 20–21]. Finally, he argues that the evidence was insufficient to convict him. [*Id.* at 8–18].

### A.  Standard

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Although a district court has the discretion to grant a new trial, Rule 33 motions are disfavored and only granted with great caution. *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir. 1997) (citing *United States v. Hamilton*, 559 F.2d 1370, 1373 (5th Cir. 1977)). In addition, the grounds for a new trial are limited to those that the defendant raises. *United States v. Nguyen*, 507 F.3d 836, 839 (5th Cir. 2007). "The remedy of a new trial . . . . is warranted only where there would be a miscarriage of justice or where the evidence preponderates heavily against the verdict." *O'Keefe*,

128 F.3d at 898 (internal quotation marks omitted) (quoting *United States v. Andrade*, 94 F.3d 9, 14 (1st Cir. 1996)).

**B.      Denial of Motion to Sever Firearms Count**

Two months before trial, Mr. Huntsberry moved to sever his felon-in-possession charge from the three drug-related charges. [Record Document 83]. On the basis of the Fifth Circuit's decision in *United States v. McCarter*, 316 F.3d 536 (5th Cir. 2002), Mr. Huntsberry argued that a denial of severance would expose the jury to the fact of his prior felony conviction and thus cause the jurors to convict him for being a "bad person," [Record Document 83-2 at 2–3]. The Court denied the motion because abundant Fifth Circuit precedent provides that any prejudice based on joinder of a felon-in-possession offense can be cured by a proper limiting instruction and a stipulation to the fact of conviction. [Record Document 103 at 2]. Mr. Huntsberry now argues that he was clearly prejudiced because his felony conviction was mentioned several times and because Ms. Huntsberry was acquitted while he was convicted. [Record Document 140-1 at 18–20]. The Government does not respond to this argument.

Rule 8(a) of the Federal Rules of Criminal Procedure authorizes joinder of offenses that are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). These offenses may then be tried together unless the joinder creates prejudice sufficient to implicate Rule 14(a)'s requirement to sever as a cure for prejudice. *United States v. Rice*, 607 F.3d 133, 142 (5th Cir. 2010). "Severance is required only in cases of 'compelling prejudice.'" *Id.* (quoting *United States v. McIntosh*, 655 F.2d 80, 84 (5th Cir. Unit A Sept. 1981)).

When an officer discovers a firearm while investigating the offense leading to the non-firearms counts in an indictment, joinder of the firearm charge is allowed under Rule 8(a). *United States v. Bullock*, 71 F.3d 171, 175 (5th Cir. 1995) (citing *United States v. Fortenberry*, 919 F.2d 923, 926 (5th Cir. 1990); *United States v. Park*, 531 F.2d 754, 761 (5th Cir. 1976)). Therefore, the question is whether Mr. Huntsberry was exposed to "compelling prejudice" requiring severance. *McIntosh*, 655 F.2d at 84 (citing *United States v. Horton*, 646 F.2d 181, 186 (5th Cir. Unit A May 1981)). To counteract any potential prejudice, the Court instructed the jury that Mr. Huntsberry's felony conviction did not imply his guilt on any of the charges and could not be used as proof of drug offenses. Although Mr. Huntsberry argues that this instruction was insufficient, [Record Document 140-1 at 19], the Fifth Circuit has found that similar instructions cure any prejudice caused by joinder of a felon-in-possession charge because "juries are presumed to follow their instructions." *Bullock*, 71 F.3d at 175 (citing *Zafiro v. United States*, 506 U.S. 534, 540–41 (1993)). This Court accordingly reaffirms its decision to deny the motion to sever.

*United States v. McCarter*, which Mr. Huntsberry cites, does not compel any contrary conclusion. In that case, the Government initially charged the defendant with drug crimes related to a sting operation in which McCarter and his co-defendants allegedly stole a cooler containing cocaine. 316 F.3d at 537. During McCarter's arrest, DEA agents discovered a box of ammunition under the driver's seat of the car he was driving. *Id.* At trial, the court informed the jury that the parties "have stipulated that [McCarter] was previously convicted of burglary, a felony." *Id.* at 539. The Fifth Circuit found that even though the district court then followed this statement with a limiting instruction on the allowable uses of this information, the court abused

6

its discretion by refusing to sever the ammunition count. *Id.* at 539, 542. The Fifth Circuit then ordered a new trial. *Id.* at 542.

*McCarter* lays out three factors that a court should consider when evaluating the prejudice caused by joinder of a felon-in-possession count to substantive counts: (1) "the efficacy of the limiting measures taken by the trial court," (2) "the strength of the evidence of the defendant's guilt," and (3) "the translucency of the government's ill motive for adding the felon-in-possession count." *Id.* at 538–39. When evaluating McCarter's case, the Fifth Circuit emphasized the weakness of the evidence of McCarter's guilt. *Id.* at 539–40. Not only was the evidence supporting his knowledge of the drugs "thin" (although it was legally sufficient), the jury actually voted to acquit on the ammunition count. *Id.* at 540. More tellingly from the Fifth Circuit's perspective was the fact that the Government added the felon-in-possession charge two months after indicting McCarter despite knowing of his felony conviction and the ammunition at the time of the original indictment. *Id.* at 540–41. It was the combination of these factors that led the Fifth Circuit to the "ineluctable conclusion . . . that the government added the [ammunition] count[] solely to buttress its case on the [drug] counts" by placing before the jury evidence of McCarter's prior conviction. *Id.* at 540 (quoting *United States v. Jones*, 16 F.3d 487, 492 (2d Cir. 1994)).

*McCarter* is clearly distinguishable from the instant case. Not only did the Government bring all of its charges in the initial indictment, the jury convicted Mr. Huntsberry of possessing the firearms. In *McCarter*, the Government had only the following circumstantial evidence of McCarter's guilt on the drug counts:

McCarter communicated with Russell[1] several times on the day of the robbery, . . . McCarter was with Russell during some of Russell's phone conversations with Conner on the day of the robbery, and Conner[] testi[fied] that McCarter was the "engineer" of the robbery and was someone with "experience" conducting this type of crime.

*Id.* at 539. In the instant case, by contrast, the Government offered circumstantial evidence of a consistent pattern of money transfers to California associated with boxes arriving in Louisiana, some of which contained marijuana. Moore testified that she sent money to California at Mr. Huntsberry's direction, while Ardoin testified to buying marijuana in distribution-size quantities with Mr. Huntsberry. Finally, the notebook found in Mr. Huntsberry's home contained a drug ledger and rap lyrics, the latter being linked to Mr. Huntsberry's career aspirations. Hence, the greater weight of evidence of his guilt on the drug counts distinguishes his case from McCarter's.

Finally, the jury in *McCarter* learned that his prior conviction was for burglary. *Id.* Given that McCarter was alleged to have conspired to possess the cocaine by burglarizing the hotel room where the cooler of cocaine was located, part of the prejudice that accrued to McCarter would have stemmed from the similarity of his prior conviction to the offense for which he was being tried. *Cf. Old Chief v. United States*, 519 U.S. 172, 185 (1997) ("Where a prior conviction was for a gun crime or one similar to other charges in a pending case the risk of unfair prejudice would be especially obvious . . . ."). Here, not only was the name of Mr. Huntsberry's prior offense kept from the jury, the prior offense (felony carnal knowledge of a juvenile) was unrelated to the drug offenses for which he was being tried.

---

[1] Russell was one of McCarter's co-defendants. Conner was the confidential informant who set up the sting. *McCarter*, 315 F.3d at 537.

Therefore, the Court denies Mr. Huntsberry's motion for a new trial on the grounds that the Court should have severed his felon-in-possession count.

## C.     Jury Instruction on Multiple Conspiracies

During voir dire, the Court asked a question designed to elicit whether venire members could distinguish between a conspiracy involving the two defendants (along with others) and a separate conspiracy involving other individuals. Mr. Huntsberry argues that the use of the voir dire question entitled him to have the Court give the pattern jury instruction on multiple conspiracies:

> You must determine whether the conspiracy charged in the indictment existed, and, if it did, whether each defendant was a member of it. If you find that the conspiracy charged did not exist, then you must return a not guilty verdict, even though you find that some other conspiracy existed. If you find that a defendant was not a member of the conspiracy charged in the indictment, then you must find that defendant not guilty, even though that defendant may have been a member of some other conspiracy.

[Record Document 140-1 at 7]. Over Mr. Huntsberry's objection, the Court declined to give this instruction.

Mr. Huntsberry seems to suggest that he could only be convicted if the evidence established an exclusive conspiracy between himself and Ms. Huntsberry such that any evidence of his involvement in illegal activity with other persons would fall outside of the indictment. This argument misreads the indictment. The indictment did not allege that Mr. Huntsberry and Ms. Huntsberry were the only conspirators. [Record Document 1]. Instead, it alleged that they conspired "together and with diverse other persons." [*Id.* at 1]. Thus, Mr. Huntsberry could be

9

properly convicted if evidence established his involvement in a conspiracy with those other persons even if the jury determined that Ms. Huntsberry was not involved.

To the extent that Mr. Huntsberry's argument is that a specific voir dire question entitled him to a parallel jury charge, he cites no authority support authority nor has the Court located any. A jury instruction on a particular defense is proper only if "there exists evidence sufficient for a reasonable jury to find in [a defendant's] favor." *United States v. Mata*, 491 F.3d 237, 241 (5th Cir. 2007) (citing *United States v. Maseratti*, 1 F.3d 330, 336 (5th Cir. 1993)). As a result, the precise nature of the evidence presented will affect the propriety of a particular instruction. The refusal to give a jury instruction constitutes error only if the instruction (1) was substantially correct, (2) was not substantially covered in the charge delivered to the jury, and (3) concerned an important issue so that the failure to give it seriously impaired the defendant's ability to present a given defense." *United States v. Tomblin*, 46 F.3d 1369, 1378–79 (5th Cir. 1995) (quoting *United States v. Pennington*, 20 F.3d 593, 600 (5th Cir. 1994)).

Mr. Huntsberry proposed the Fifth Circuit pattern instruction, which was substantially correct. *See United States v. Turner*, 960 F.2d 461, 464 (5th Cir. 1992) (citing *United States v. Lincoln*, 589 F.2d 379, 381 (8th Cir. 1979); *United States v. DeShazo*, 565 F.2d 893, 894 (5th Cir. 1978); *United States v. Carvin*, 555 F.2d 1303 (5th Cir. 1977)). The Court will assume without deciding that the remaining instructions did not adequately convey that Mr. Huntsberry had to be convicted of involvement in the conspiracy charged in the indictment rather than in some other conspiracy.

Although Mr. Huntsberry now argues that if the multiple conspiracies instruction had been given the "jury could have rationally determined that any alleged agreement between Mr. Huntsberry and any other individuals was part of a separate conspiracy . . . ," [Record Document 140-1 at 7], Mr. Huntsberry did not raise this defense at trial. Instead, and as the bulk of the argument in the instant motion demonstrates, Mr. Huntsberry's primary defense was that the evidence was insufficient to convict him of involvement with any conspiracy. Thus, the absence of a multiple conspiracies instruction did not impair Mr. Huntsberry's ability to present a separate-conspiracy defense because his trial strategy did not depend upon establishing a separate conspiracy but rather on distancing himself from the conspiracy alleged in the indictment. While the Court believed at the time of voir dire that the evidence might establish multiple conspiracies (and hence that the instruction was appropriate), at the close of evidence the only reasonable conclusion to be drawn was that a single conspiracy existed. The question that the jury was called to answer was whether Mr. Huntsberry and Ms. Huntsberry were part of that conspiracy. Because there was no error in refusing to give the requested instruction, Mr. Huntsberry's motion for a new trial is denied on this ground.

### D.    Inconsistent Verdicts

Because Ms. Huntsberry was acquitted of all charges and because the indictment alleged that Defendants conspired together and aided and abetted one another, Mr. Huntsberry argues that his conviction constitutes a "clear miscarriage of justice." [Record Document 140-1 at 20]. The Government argues that the Fifth Circuit has recognized that as long as a guilty verdict is

supported by sufficient evidence, it is not invalidated by an inconsistent verdict in favor of a co-defendant. [Record Document 143 at 7–8].

Here again, Mr. Huntsberry appears to argue that the language of the indictment allows him to be convicted of criminal activity involving Ms. Huntsberry and not of criminal activity involving any other persons. [Record Document 140-1 at 20]. Thus, he argues, if Ms. Huntsberry was not convicted of conspiracy, possession with intent to distribute, or use of a communication facility to facilitate a drug offense, then it would be inconsistent to convict him of those offense. [*Id.*]. As discussed above, this argument misreads the indictment with regard to the conspiracy count, which allows for a conviction of either defendant whether that defendant involved in a conspiracy either with the other or whether the involvement was with "diverse other persons." [Record Document 1 at 1].

Moreover, the Government's argument regarding inconsistency is correct. [Record Document 143 at 78]. There is no requirement that jury verdicts be consistent in order to be upheld. *Dunn v. United States*, 284 U.S. 390, 393 (1932). Even where inconsistent verdicts "cannot rationally be reconciled," the inconsistency is an insufficient basis upon which to disturb the jury's findings. *United States v. Powell*, 469 U.S. 57, 69 (1984). The Supreme Court has articulated several reasons for this rule. First, an inconsistent verdict may mean that the jury convicted when the evidence did not establish guilt beyond a reasonable doubt, but it could also mean that the jury found that the defendant was guilty and then compromised, exercised lenity, or simply made a mistake. *Id.* at 65. The impossibility of determining "whose ox has been gored" led the Court to reject a rule mandating that inconsistent verdicts always be interpreted in a defendant's favor,

in part because the Government cannot appeal an acquittal, even one made on improper grounds. *Id.* at 65–66. The Court also pointed out that engaging in a case-by-case evaluation of the source of the inconsistent verdict would either be unreasonably speculative or else require probing into jury deliberations. *Id.* at 66–67. Finally, separate sufficiency-of-the-evidence review by trial and appellate courts protects defendants because that review evaluates each count separately and asks whether on the basis of the evidence presented any rational trier of fact could find guilt beyond a reasonable doubt. *Id.* at 67 (citing Fed. R. Crim. P. 29(a); *Glasser v. United States*, 315 U.S. 60, 80 (1942)).

Sitting en banc, the Fifth Circuit unanimously construed *Powell* to hold that a conspiracy conviction may not be overturned even if every other indicted co-conspirator is acquitted. *United States v. Zuniga-Salinas*, 952 F.2d 876, 878 (5th Cir. 1992) (en banc). In adopting this rule, the court considered the rationale of *Powell*, "including specifically the possibility of mistake, compromise, or lenity, and the independent availability of sufficiency-of-the-evidence review." *Id.* In Mr. Huntsberry's case, the jury convicted one indicted co-conspirator and acquitted another. [Record Documents 129 and 134]. This factual scenario precisely parallels that in *Zuniga-Salinas* in which two co-conspirators were indicted, but only one was convicted. 952 F.2d at 877. This Court is bound by that ruling and must thus reject Mr. Huntsberry's argument that convicting him while acquitting his mother was a "miscarriage of justice."

The logic of *Powell* also disposes of Mr. Huntsberry's related argument regarding Counts II and III (unlawful use of a communication facility and possession with intent to distribute). In both cases, the indictment alleged that Defendants committed the offenses, "each aiding and

abetting the other." [Record Document 1 at 2]. For purposes of evaluating this argument, this Court will assume without deciding that acquitting Ms. Huntsberry on these counts is logically inconsistent with convicting Mr. Huntsberry on them.[2] Even so, Mr. Huntsberry identifies no law supporting his theory that this inconsistency requires reversing his conviction. The Supreme Court has made it clear that the mere fact of inconsistency does not subject a jury verdict to review. *Powell*, 469 U.S. at 69. The jury may have found Ms. Huntsberry guilty but then impermissibly exercised lenity; alternately, the jury may have found that the evidence was insufficient to convict either defendant but then decided for some inappropriate reason to convict Mr. Huntsberry. Unless this Court were to question the jury as to its reasoning (something that is clearly inappropriate), any determination this Court makes regarding impermissible jury decisionmaking would be pure speculation. *See id.* at 67 (citing Fed. R. Evid. 606(b); *McDonald v. Pless*, 238 U.S. 264 (1915)) ("Courts have always resisted inquiring into a jury's thought processes . . . ."). It was in part to avoid such speculation that the Supreme Court reaffirmed the *Dunn* rule in *Powell*. 469 U.S. at 68–69. This Court holds that *Powell* controls the results on the marijuana-possession and communication-facility counts as well as on the conspiracy count. It follows that any inconsistency in the jury's verdict does not entitle Mr. Huntsberry to a new trial.

---

[2] The Court also notes that evidence of each defendant's involvement in the alleged crimes was different. For instance, there was no direct evidence that Ms. Huntsberry ever opened any of the packages, while there was direct testimony that Mr. Huntsberry did so.

### E.    Weight of the Evidence

While inconsistency alone does not require reversing the jury's verdict against Mr. Huntsberry, he is still entitled to an independent determination of whether the evidence was sufficient to convict him on each count. *See Powell*, 469 U.S. at 478. When the weight of the evidence does not "preponderate[] against the verdict," a court should not grant a new trial. *United States v. Chapman*, 851 F.3d 363, 380 (5th Cir. 2017) (quoting *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004)). Although a court considering a motion for a new trial may reweigh the evidence and assess witnesses' credibility, a court may not "set aside the verdict simply because it feels some other result would be more reasonable." *United States v. Arnold*, 416 F.3d 349, 360 (5th Cir. 2005) (quoting *United States v. Robertson*, 110 F.3d 1113, 1118 (5th Cir. 1997)). Rather, the weight of the evidence against the verdict must be "such that it would be a miscarriage of justice to let the verdict stand." *Id.* (quoting *Robertson*, 110 F.3d at 1118).

### 1.    Conspiracy (Count I)

Mr. Huntsberry argues for a new trial on Count I because there was insufficient evidence of any agreement between Mr. Huntsberry and his mother or between Mr. Huntsberry and any other persons. [Record Document 140-1 at 8–11]. The Government counters that the evidence presented at trial established Mr. Huntsberry's involvement in a conspiracy because he approached Ardoin and Moore to solicit their involvement in a scheme to obtain drugs from California by mail. [Record Document 143 at 4–6].

"The elements of a conspiracy to distribute a controlled substance under 21 U.S.C. § 846 are "(1) an agreement between two or more persons to violate the narcotics laws; (2) the

defendant's knowledge of the agreement; and (3) the defendant's voluntary participation in the conspiracy." *United States v. Thomas*, 348 F.3d 78, 82 (5th Cir. 2003) (citing *United States v. Booker*, 334 F.3d 406, 409 (5th Cir. 2003)). The indictment alleged that "Nanette Huntsberry and Jabori Huntsberry . . . did knowingly and intentionally combine, conspire, confederate and agree together and with diverse other persons, to the Grand Jury known and unknown, to commit the . . . offense" of possession with intent to distribute marijuana. [Record Document 1 at 1]. Therefore, it is not necessary that the Government have succeeded in proving beyond a reasonable doubt that an agreement existed between Ms. Huntsberry and Mr. Huntsberry so long as it has established the elements with respect to Mr. Huntsberry and "diverse other persons" beyond a reasonable doubt.

Mr. Huntsberry argues that he was merely in the vicinity of Ardoin and Moore while they engaged in a conspiracy to obtain marijuana. [Record Document 140-1 at 11]. In support, he cites to Fifth Circuit precedent that a conspiracy may not be proven "merely by presenting evidence placing the defendant in 'a climate of activity that reeks of something foul.'" *United States v. Malto*, 985 F.2d 743, 746 (5th Cir. 1992) (quoting *United States v. Jackson*, 700 F.2d 181, 185 (5th Cir. 1983)). However, both Ardoin and Moore testified to Mr. Huntsberry's involvement. Ardoin's testimony that Mr. Huntsberry approached him about obtaining marijuana through the mail combined with the circumstantial evidence of the drug ledger found in Mr. Huntsberry's home sufficiently established the latter's knowledge of the agreement. Similarly, Moore's testimony that she sent money to California at Mr. Huntsberry's direction combined with circumstantial evidence of the large number and high frequency of wire transfers

allows a conclusion that his participation was voluntary. Although Mr. Huntsberry impugns the credibility of Ardoin and Moore, both of whom may have had self-interested motives in testifying, the Court finds that their testimony regarding Mr. Huntsberry's role in the conspiracy was credible. Certainly the jury found them to be so.

Although Mr. Huntsberry emphasizes that there was no evidence that any marijuana received was actually distributed, [Record Document 140-1 at 10], the charge is <u>conspiracy</u> to possess marijuana with <u>intent</u> to distribute it. Thus, whether the marijuana was actually distributed is simply irrelevant. *See United States v. Addison*, No. CRIM.A. 14-168, 2015 WL 1245556, at *4 (E.D. La. Mar. 18, 2015) ("The § 846 conspiracy charge does not require proof that [the defendant] actually distributed or possessed with the intent heroin or cocaine, or proof of 'an overt act to show participation in a [drug] conspiracy.'" (quoting *United States v. Turner*, 319 F.3d 716, 721 (5th Cir. 2003))). And while Mr. Huntsberry is correct that no evidence established the identity of his supplier, [Record Document 144 at 3], this is also irrelevant to the existence of a conspiracy to possess marijuana with intent to distribute.

Similarly, Mr. Huntsberry points out that the agents who testified could not definitely say that the money transfers were payment for marijuana that was being sent from California, but ignores Moore's testimony of her belief that this was the case. Combined with Ardoin's testimony regarding Mr. Huntsberry's claim to have a source of marijuana in California, a jury could reasonably infer the existence of the charged conspiracy. Mr. Huntsberry also claims that no individual witness's testimony is sufficient to convict him. [*Id.* at 1–4]. Even if the Court were to agree with this assessment of the evidence, witness testimony is not weighed in isolation. It

is true that the evidence presented at trial does not exclude every possible theory of innocence. It is also true that the key prosecution witnesses do not have clean hands. Nevertheless, after considering the totality of the evidence, this Court does not find that the weight of the evidence preponderates against the verdict. Mr. Huntsberry is not entitled to a new trial on the conspiracy count.

### 2.    Possession with Intent to Distribute (Count III)

Mr. Huntsberry argues that he is entitled to a new trial on this count because there was no evidence that he was aided and abetted in his possession by Ms. Huntsberry and because he had no knowledge of the controlled delivery of the package containing marijuana. [Record Document 140-1 at 13–14]. The Government argues that the evidence demonstrates his constructive possession. [Record Document 143 at 6].

The elements of possession of marijuana with intent to distribute are: "(1) knowing possession (2) of marijuana (3) with intent to distribute." *United States v. Ramos-Cardenas*, 524 F.3d 600, 605 (5th Cir. 2008) (citing *United States v. Resio-Trejo*, 45 F.3d 907, 911 (5th Cir. 1995)). Both direct and circumstantial evidence may be used to prove possession, which may be actual or constructive. *Id.* (citing *United States v. Vergara*, 687 F.2d 57, 61 (5th Cir. 1982)). "[I]ntent to distribute may be inferred from the possession of a large quantity of the drug." *Id.* (citing *United States v. Prieto-Tejas*, 779 F.2d 1098, 1101 (5th Cir. 1986)). Forensic analysis revealed that the substance in the package was marijuana, a fact that Mr. Huntsberry does not dispute. Given that the package contained approximately two pounds of marijuana—far more than is believably for personal use—a reasonable inference is that the possessor intended to distribute the marijuana.

When Ms. Huntsberry took delivery of the package she either was or was not a member of the conspiracy. A member of a conspiracy can be held criminally liable for the foreseeable acts of co-conspirators that further the aims of the conspiracy. *United States v. Sanjar*, 876 F.3d 725, 743 (5th Cir. 2017). Her acceptance of the package containing marijuana would clearly have been in furtherance of the conspiracy. It would also have been foreseeable to Mr. Huntsberry based on evidence presented that Ms. Huntsberry accepted at least one package addressed to Mr. Huntsberry's address and then hand-delivered it to his house. As a result, Mr. Huntsberry can be held liable for Ms. Huntsberry's actual possession of the package if she was a member of the conspiracy.

If Ms. Huntsberry was not a member of the conspiracy, then Mr. Huntsberry can only be convicted on a theory of constructive possession. The delivery address on the package, although carrying the name of a non-existent business (Amazing Hair Salons), was Mr. Huntsberry's home address. The jury was presented with evidence that packages sent from California came into Mr. Huntsberry's possession. A reasonable inference is that Mr. Huntsberry was the final intended recipient of the package delivered on February 14, 2014 and that Ms. Huntsberry's actual possession of the package was as Mr. Huntsberry's agent. The additional testimony of Moore and Ardoin discussed above in relation to the conspiracy count further supports the inference that Mr. Huntsberry knew that this package contained marijuana.

In support of his motion, Mr. Huntsberry points out that the package of marijuana was accepted by Ms. Huntsberry and was found inside her house and that no witness testified that Mr. Huntsberry had actual knowledge of the package. [Record Document 140-1 at 13–14]. While

this is an accurate statement of some of the evidence, it ignores evidence that other packages accepted by Ms. Huntsberry came into Mr. Huntsberry's possession; this evidence, in turn, allows the inference that Mr. Huntsberry intended to come into possession of this package. Thus, this Court finds that the weight of the evidence does not preponderate against the verdict, and so a new trial is not warranted.

### 3. Unlawful Use of a Communication Facility (Count II)

Mr. Huntsberry argues that he is entitled to a new trial because there was no evidence of aiding and abetting, because he did not have a post office box to which packages were delivered, and because he did not take delivery of the package containing marijuana. [*Id.* at 11–12]. The Government argues that the evidence supporting the conspiracy conviction also supports the conviction for this count. [Record Document 143 at 4–6].

The elements of this offense are "(1) knowing[] or intentional[] (2) use[] [of] a communication facility (3) to facilitate the commission of a drug offense." *United States v. Henao-Melo*, 591 F.3d 798, 802 n.5 (5th Cir. 2009) (quoting *United States v. Mankins*, 135 F.3d 946, 949 (5th Cir. 1998)).[3] The statute defines "mail" as a communication facility, 18 U.S.C. § 843(b); hence, it is irrelevant that Mr. Huntsberry never had a post office box to which packages were delivered. The mere fact that the controlled-delivery package arrived through the postal service establishes the use of a communication facility. As discussed above, Mr. Huntsberry possessed

---

[3] The Court notes that the Government incorrectly relies upon evidence of the entire conspiracy to support the conviction as to this count. [Record Document 143 at 4–6]. The indictment alleges that this offense was committed on or about February 14, 2014, the date of the controlled delivery, [Record Documents 1 at 2], and so it is evidence related to the use of the mail in relation to that package that is relevant.

the marijuana either because Ms. Huntsberry was his co-conspirator or because she was acting as the agent through which he obtained controlled over the marijuana. Because the package arrived in her possession via the mail, the postal service was used to "facilitate the commission of a drug offense." Thus, all that remains is the question of whether Mr. Huntsberry knew of or intended the use of the mail to facilitate his possession with intent to distribute. Both Moore and Ardoin testified to details of the conspiracy to send money to California and receive marijuana through the mail. Although neither testified to an arrangement regarding this particular package, it is reasonable to infer from the pattern of shipments and money transfers presented at trial that Mr. Huntsberry had the requisite intent to use the mail system to acquire possession of this package. Thus, it does not matter that Mr. Huntsberry did not accept this package; the evidence is sufficient to establish his use of the postal system to facilitate marijuana possession. The Court will thus deny his motion for a new trial on Count II.

### 4.    Possession of a Firearm by a Convicted Felon (Count IV)

During the search of Mr. Huntsberry's home, a rifle and a pistol were found in the closet of the master bedroom. Mr. Huntsberry argues that he cannot be convicted on a theory of constructive possession because he shared the home on occasion with his girlfriend and because Moore and Ardoin regularly visited the home. [Record Document 140-1 at 14–18]. The Government argues that trial testimony indicated that Ardoin left the firearms on the back of a truck parked at Mr. Huntsberry's home four years prior and that they were then found in the closet. [Record Document 143 at 7].

Conviction on this count requires proof that the defendant "(1) has been convicted of a felony; (2) possessed a firearm in or affecting interstate commerce; and (3) knew that he was in possession of the firearm." *United States v. Ybarra*, 70 F.3d 362, 365 (5th Cir. 1995) (citing *United States v. Dancy*, 861 F.2d 77, 81 (5th Cir. 1988)). Mr. Huntsberry stipulated to his prior felony conviction, and the Government's expert established beyond a reasonable doubt that the firearms had traveled in interstate commerce. Thus, the case turns on the issue of Mr. Huntsberry's knowing possession.

Possession of firearms may be actual or constructive. *Id.* (citing *United States v. Mergerson*, 4 F.3d 337, 348–49 (5th Cir. 1993)). The evidence at trial allows a conviction of Mr. Huntsberry on this count under a theory of constructive possession only. To prove constructive possession, the Government must show either "ownership, dominion, or control over the contraband itself, or dominion or control over the premises in which the contraband is concealed." *United States v. Smith*, 930 F.2d 1081, 1085 (5th Cir. 1991) (citing *United States v. Posner*, 868 F.2d 720, 723 (5th Cir. 1989); *United States v. Martinez*, 588 F.2d 495, 498 (5th Cir. 1979), *abrogation on other grounds recognized by United States v. Gavin*, 394 F. App'x 643, 645 (11th Cir. 2010)). However, "mere control or dominion over the place in which contraband or an illegal item is found by itself is not enough to establish constructive possession when there is joint occupancy of a place." *Mergerson*, 4 F.3d at 349. In joint-occupancy cases, the Fifth Circuit employs a "commonsense, fact-specific approach" to evaluate constructive possession. *Id.* (quoting *Smith*, 930 F.2d at 1086). The Fifth Circuit rejected an alternative approach that would have required the Government to prove an "affirmative link" between the defendant and the contraband. *Id.* (citing *United States*

*v. Reese*, 775 F.2d 1066, 1073 (9th Cir. 1985)). Believing that the "affirmative link" approach implied an inappropriate direct-evidence requirement, the Fifth Circuit endorsed the view that constructive possession of contraband located in jointly occupied residences be evaluated in light of "all of the circumstances of the case." *Smith*, 930 F.2d at 1086. Hence, under the precedent that binds this Court, "something else (e.g., some <u>circumstantial</u> indicium of possession) is required besides mere joint occupancy before constructive possession is established." *Mergerson*, 4 F.3d at 349 (emphasis added).

The evidence is not unequivocal regarding the joint occupancy of 5623 Albert Road. Although at least one witness testified obliquely that Mr. Huntsberry shared the home with his girlfriend, most witnesses testified that it was Mr. Huntsberry's home and did not mention any other occupants. Even if it were conclusively established that he jointly occupied the home, the following evidence was also adduced at trial: (1) the guns were left on a truck parked outside of his home after a New Year's Eve party during which the guns had been fired; (2) the person who left the guns (Ardoin) did not reclaim them; (3) four years passed; (4) the guns were found in the closet of the master bedroom in the home in which Mr. Huntsberry lived; and (5) one of the guns was a rifle. The guns were left outside of Mr. Huntsberry's residence and then were found inside; Mr. Huntsberry is a reasonable candidate to be the person that moved them. Even if he did not move them, the guns were located in a closet rather than in a more inaccessible and concealed location such as beneath a mattress or inside a crawl space. Combined with the fact that one of the guns was a rifle and so much more difficult to overlook, especially for a period

of years, the totality of these facts warrants an inference that Mr. Huntsberry was aware of the guns' existence and thus constructively possessed them.

The two cases cited by Mr. Huntsberry are distinguishable. In the first, *United States v. Mergerson*, a handgun was found between the mattress and box springs of a bed in a room that Mergerson had jointly occupied with his girlfriend for a month. 4 F.3d at 348. A pawnshop receipt introduced at trial showed that Mergerson's girlfriend had purchased the gun before Mergerson moved in. *Id.* The Fifth Circuit held that these facts did not support a theory of constructive possession. *Id.* at 349. By contrast, here the guns were in a closet (a significantly less concealed location), one was a rifle rather than a handgun (and so more noticeable), and the guns had first arrived on the property four years before they were found during the search (and so were more likely to have been noticed by an occupant of the home).

In the second case, *United States v. Moreland*, the Fifth Circuit held that a defendant could not be convicted of knowing possession of child pornography found in the unallocated slack space on a computer to which his wife and his father also had unrestricted access. 665 F.3d 137 (5th Cir. 2011). Unallocated slack space is space occupied by deleted computer files that have not yet been overwritten. *Id.* at 142–43. In determining that the evidence at trial did not establish Moreland's knowledge of the images found on the computer, the court emphasized that the deleted images could not be accessed without specialized knowledge and software. *Id.* at 152. Thus, because any of the three people could have placed the images onto the computer and then deleted them, their mere presence on the computer could not establish the requisite degree of knowledge. *Id.* at 150–52. The distinction to be drawn here is between a place that cannot be

accessed without specialized equipment and knowledge (i.e., unallocated slack space) and a place that, while not necessarily publicly displayed, is readily accessible (i.e., a bedroom closet). Moreover, in *Moreland* the computer expert testified that it could not be determined how long the images had been on the computer. *Id.* at 151. Conversely, in the present case, while there was no evidence as to the length of time the firearms had been in Mr. Huntsberry's closet, there was direct testimony that they came onto his property approximately four years earlier.

While the question is somewhat closer than for the other counts, this Court cannot conclude that the evidence preponderates against the jury's verdict. Although it is not inherently unreasonable to conclude that Mr. Huntsberry had no knowledge of guns located in the closet of his home, this Court may not overturn the jury's verdict merely because some other verdict would be reasonable. *Arnold*, 416 F.3d at 360 (quoting *Robertson*, 110 F.3d at 1118). The cases that Mr. Huntsberry cites do not persuade this Court otherwise as in each case evidence introduced at trial supported alternate explanations for the presence of the contraband. In *Mergerson*, the firearm had been purchased by the co-occupant prior to the defendant taking up occupancy, 4 F.3d at 348, while in *Moreland*, witnesses testified to the defendant's father's pornography viewing habits, 665 F.3d at 146. Although evidence at trial established that other people lived in or visited Mr. Huntsberry's home, no evidence presented at trial suggested that any of these people possessed the firearms. Because the weight of the evidence does not preponderate against the verdict, the Court denies Mr. Huntsberry's motion for a new trial.

## III.   Motion for a Judgment of Acquittal

### A.   Standard

A Rule 29 motion for a judgment of acquittal may not be granted if "after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). This Court must interpret the evidence, both direct and circumstantial, in the Government's favor. *See United States v. Mendoza*, 522 F.3d 482, 488 (5th Cir. 2008) (citing *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc)); *United States v. DeJean*, 613 F.2d 1356, 1359 (5th Cir. 1980) (citing *United States v. Barrera*, 547 F.2d 1250 (5th Cir. 1977)). This Court must also draw all reasonable inferences, including credibility determinations, in support of the verdict. *See Mendoza*, 522 F.3d at 488 (citing *United States v. Moreno,* 185 F.3d 465, 471 (5th Cir. 1999); *Bell,* 678 F.2d at 549). "In effect, the court assumes the truth of the evidence offered by the prosecution." *Robertson*, 110 F.3d at 1117.

While "[a]ll evidence is considered, not just that supporting the verdict, . . . the evidence need not conclusively disprove alternatives; the jury is 'free to choose among reasonable constructions of the evidence.'" *United States v. Peterson*, 244 F.3d 385, 389 (5th Cir. 2001) (quoting *United States v. Richards*, 204 F.3d 177, 206 (5th Cir. 2000), *overruled on other grounds by United States v. Cotton*, 535 U.S. 625 (2002)). "<u>Circumstances altogether inconclusive, if separately considered, may, by their number and joint operation</u>, especially when corroborated by moral coincidences, <u>be sufficient to constitute conclusive proof</u>." *United States v. Vasquez,* 677 F.3d 685,

692 (5th Cir. 2012) (quoting *United States v. Ayala*, 887 F.2d 62, 67 (5th Cir. 1989)). "Jurors may properly 'use their common sense' and 'evaluate the facts in light of their common knowledge of the natural tendencies and inclinations of human beings.'" *Id.* (quoting *Ayala*, 887 F.2d at 67). Therefore, rather than weighing evidence or assessing witnesses' credibility, *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir. 1996), *abrogated on other grounds by United States v. Vargas-Ocampo*, 747 F.3d 299 (5th Cir. 2014) (en banc), this Court need only determine "whether the jury made a rational decision, not whether its verdict was correct on the issue of guilt or innocence," *United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995) (citing *United States v. Jaramillo*, 42 F.3d 920, 923 (5th Cir. 1995), *abrogated on other grounds by Vargas-Ocampo*, 747 F.3d 299).

### B.   Sufficiency of the Evidence

Mr. Huntsberry attacks the sufficiency of the evidence on three bases: (1) that it was irrational for the jury to acquit Ms. Huntsberry but convict Mr. Huntsberry; (2) that no evidence was presented of the two defendants aiding and abetting each other, as alleged in the indictment; and (3) there was no direct evidence of the elements of most of the crimes. [Record Document 139-1 at 8–18].

Mr. Huntsberry's first argument is not a sufficiency of the evidence argument at all, but rather an argument about the validity of inconsistent verdicts; the Supreme Court has held that these issues are separate. *See Powell*, 469 U.S. at 67. Therefore, even if convicting Mr. Huntsberry while acquitting his mother is inconsistent, that fact in itself provides no basis for a sufficiency-of-the-evidence challenge.

The remaining two arguments do address the sufficiency of the evidence. Unlike review under Rule 33, where this Court may reweigh the evidence, in review under Rule 29, this Court must view all evidence in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 319 (citing *Johnson*, 406 U.S. at 362). Thus, "the standard under Rule 33 is more lenient." *United States v. Mix*, No. CRIM.A. 12-171, 2014 WL 2625034, at *1 (E.D. La. June 12, 2014). It follows that because Mr. Huntsberry cannot satisfy the more defendant-friendly standard for a new trial on sufficiency-of-the-evidence grounds, he cannot meet the more stringent standard for a post-verdict judgment of acquittal on the same grounds. Therefore, for the reasons discussed above in the context of his motion for a new trial on grounds of sufficiency of the evidence, his motion for a judgment of acquittal is denied.

## IV.  Conclusion

In light of the above, Mr. Huntsberry's motions for a judgment of acquittal and for a new trial [Record Documents 139 and 140] are **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this the _11th_ day of _October_, 2018.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE